IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
2014 JUN 13 PM 4: 51
CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
    DEPUTY

DATAQUILL, LIMITED,
                Plaintiff,

-vs-                                            Case No. A-13-CA-706-SS

APPLE INC.,
                Defendant.

## ORDER

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Defendant Apple Inc.'s Motion to Transfer Venue [#48], Plaintiff DataQuill, Ltd.'s Sealed Response [#60], and Apple's Reply [#65]; DataQuill's Sealed Motion to Compel [#61], Apple's Response [#67], and DataQuill's Sealed Reply [#74]; DataQuill's post-hearing Notice [#77]; and Apple's post-hearing Sealed Notice [#80]. Having reviewed the documents, the governing law, the arguments of counsel at the hearing held May 2, 2014, and the file as a whole, the Court now enters the following opinion and orders GRANTING the motion to transfer and transferring this case to the United States District Court for the Northern District of California.

### Background

DataQuill is a British Virgin Islands-based company and the owner of five patents sharing a specification and describing a pen- or quill-like handheld device capable of scanning items and transmitting data wirelessly.[1] Apple, headquartered in Cupertino, California, makes a variety of

---

[1] The five patents are United States Patent Numbers 6,058,304 ("Data Entry System"), 7,139,591 ("Hand Held Telecommunications And Data Entry Device"), 7,505,785 ("Data Entry Systems"), 7,920,898 ("Data Entry Systems"), and 8,290,538 ("Data Entry Systems").

products, including the smartphone branded the "iPhone." DataQuill alleges a series of Apple products—several iterations of the iPhone and its App Store, iTunes, and iBooks software programs—infringes these patents. DataQuill therefore filed suit against Apple in Austin, Texas.

Apple has moved to transfer this case to its home turf: the United States District Court for the Northern District of California, which encompasses California's Silicon Valley generally and Cupertino specifically. Apple does not deny having connections to this district. Apple has two campuses in Austin and employs some 3,500 people here. Both Apple and the City of Austin have plans to increase Apple's footprint in Austin over the next decade, including expansion plans and additional tax incentives on top of those already given to the tech giant. And the processors at the heart of many iPhones, including the most recent generation of the product, are manufactured for Apple in Austin by South Korean conglomerate Samsung. But Apple maintains the information relevant to this dispute is centered in and around Cupertino, where Apple's engineers have developed each and every product accused of infringing DataQuill's patents.

DataQuill disagrees and contends Austin is a fine venue for a patent infringement suit against Apple. DataQuill plays up Apple's "substantial presence in Austin," and makes a largely burden-focused argument against transfer to the Northern District of California. Amidst accusations of discovery gamesmanship and a high-rhetoric motion to compel, DataQuill insists it should not be forced to litigate against Apple in Apple's backyard.

The Court held a hearing on these pending motions on May 2, 2014. After listening to the parties' arguments, the Court ordered the parties to confer on their primary discovery dispute and further ordered Apple to file with the Court an additional pleading setting forth additional, potentially relevant contacts in the Austin area. With that process now complete, the Court turns to

the merits of the transfer motion and concludes the Northern District of California is clearly the more convenient venue for the trial of this lawsuit.

## Analysis

### A. Legal Standard

"For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Section 1404(a) "is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). "There can be no question but that the district courts have broad discretion in deciding whether to order a transfer" under § 1404(a). *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 313–15 (5th Cir. 2008) (internal quotation marks omitted).

The preliminary question in a motion for transfer of venue is whether the suit could have originally been filed in the destination venue. *Id.* at 312. If it could have, the focus shifts to whether the party requesting the transfer has demonstrated the "convenience of parties and witnesses" requires transfer of the action, considering various private and public interests. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1974).[2]

The private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious

---

[2] Although *Gilbert* dealt with *forum non conveniens*, the Fifth Circuit applies the "*Gilbert* factors" in the § 1404(a) context. *See In re Volkswagen of Am.*, 545 F.3d at 314 n.9.

and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). The public interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id.* Although the *Gilbert* factors are "appropriate for most transfer cases, they are not necessarily exhaustive or exclusive"; indeed, the Fifth Circuit has noted "'none . . . can be said to be of dispositive weight.'" *In re Volkswagen of Am.*, 545 F.3d at 313–15 (quoting *Action Indus., Inc. v. U.S. Fid. & Guar. Corp.*, 358 F.3d 337, 340 (5th Cir. 2004)). Despite the wide array of private and public concerns, a court must engage in a "flexible and individualized analysis" in ruling on a motion to transfer venue. *Stewart*, 487 U.S. at 29.

Though the above is similar to the standard in the *forum non conveniens* context, § 1404(a) requires a lesser showing of inconvenience. *In re Volkswagen of Am.*, 545 F.3d at 314. As such, the movant need not show the *Gilbert* factors *substantially* outweigh the plaintiff's choice of venue—it is enough to show the new venue is clearly more convenient than the original one. *See id.* Nonetheless, as the Supreme Court has cautioned, while the movant's burden is lessened, the plaintiff's choice of venue is still to be considered. *See Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955). Accordingly, the Fifth Circuit's rule is that while the plaintiff's choice of venue is not a factor under *Gilbert*, it places a "significant" burden of proof upon the movant to "show good cause for the transfer." *In re Volkswagen of Am.*, 545 F.3d at 314 n.10. "Thus, when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *Id.* at 315.

**B.      Application**

There is no dispute this case "might have been brought" in the Northern District of California, where Apple is headquartered, so the preliminary hurdle in the § 1404(a) analysis is easily cleared. *See id.* The Court therefore turns to the numerous *Gilbert* factors, beginning with the private interest factors and concluding with the public interest factors.

The first private interest factor is the relative ease of access to sources of proof. *Id.* The Fifth Circuit has cautioned this factor remains relevant despite technological advances having made electronic document production commonplace. *Id.* at 316. The Federal Circuit has observed that "[i]n patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer," and therefore the location of the defendant's documents tends to be the more convenient venue. *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009). Apple has designed each of the accused products at its headquarters in Cupertino. Accordingly, documents relevant to the development and creation of Apple's products are likely to be found in Cupertino, even if some of the documents may be equally accessible electronically from Austin. Additionally, DataQuill has failed to demonstrate the existence of any meaningful documents at Apple's Austin campuses, which do not perform design work and primarily house customer service functions for the company. Although Samsung manufacturers chips for Apple in Austin, the manufacturing of those chips is not at issue in this case, and Samsung has not been sued. Instead, the focus of the infringement story appears to be on the way Apple products use software such as iTunes or the App Store to remotely access information.[3] Solving that puzzle requires information from Apple's software and hardware

---

[3] For example, DataQuill notes many of its claims include the presence of a "controller," an element it believes satisfied by the Samsung-manufactured processor. At this early stage, it is unclear whether the absence of a "controller" will be part of Apple's defense. However, the controller itself is at best tangential to the core dispute over how the iPhone

engineers in Cupertino, not its third-party processor manufacturer in Austin. The evidence also demonstrates whatever limited amount of relevant information exists in Austin is likely to be significantly outweighed by the amount of relevant information present in Cupertino. This factor weighs in favor of transfer.

The second private interest factor is the availability of compulsory process to secure the attendance of witnesses. *In re Volkswagen of Am.*, 545 F.3d at 316. Apple has identified eight former employees who helped develop some of the accused products and who presently reside in the Northern District of California. Similarly, Apple has identified a handful of inventors whose prior art was cited by the Patent Office in the examination of the patents-in-suit and who presently reside in the Northern District of California. The California court's absolute subpoena power over these numerous witnesses weighs in favor of transfer. *Id.* at 316; *In re Genentech*, 566 F.3d at 1345. DataQuill primarily faults Apple for failing to provide details as to these named individuals' proposed testimony, but Apple need not provide such concrete information at this stage of the litigation. *Cf. In re Volkswagen of Am.*, 545 F.3d at 317 n.12 (noting, in the *forum non conveniens* context, affidavits of specific testimony are not required); *see also In re Genentech*, 566 F.3d at 1343–44 (when conducting a § 1404(a) analysis, identification of witnesses relevant to issues which might arise at trial is sufficient; district courts "need not evaluate the significance of the identified witnesses' testimony"). Additionally, there is nothing to counterbalance the weight of these

---

uses software to interact with remote data sources. This may explain why Apple represents DataQuill did not mention the controller—or any of the other basic hardware characteristics contained in the claims, such as a "display," a "reading sensor," "memory," a "speaker," or a "camera"—in its discovery requests, and instead focused on "Acquisition Functionality," a term DataQuill defined in terms of the use of iTunes, App Store, and iBooks software. Def.'s Reply [#65-2], Ex. 2.

California witnesses in this district. Although DataQuill suggests (with far less specificity[4]) there may be prior art inventors in Texas, too, the majority of relevant non-party witnesses appear to reside in and around Silicon Valley. This factor weighs in favor of transfer.

The third private interest factor is the cost of attendance for willing witnesses. *In re Volkswagen of Am.*, 545 F.3d at 317. Apple has identified a number of Cupertino-based witnesses who are likely to possess specific knowledge relevant to the accused products, in addition to any of the former Apple designers who may willingly appear to testify. Inconvenience to these witnesses increases as the distance they must travel increases, and traveling to a local court is far more convenient than traveling to Texas. *See id.* at 317 (discussing the "100-mile" rule). DataQuill has not identified any willing witnesses residing in this district. This factor weighs in favor of transfer.

The fourth private interest factor looks to practical concerns in the expedient and inexpensive trial of the case. *Id.* at 315. This is a lawsuit between a foreign plaintiff and a defendant with longstanding and significant ties to the Northern District of California, both generally and specifically with regard to the issues in this case. Most of the witnesses are in California. DataQuill has no presence in Austin. There can be no question it will be more practical to try this case in California than in Texas. This factor weighs in favor of transfer.

Turning to the public interest factors, the first is administrative difficulties related to court congestion. *Id.* Attempting to accurately understand another court's docket from the outside is always a difficult task. DataQuill relies on publicly available data concerning the average time to trial in each district to suggest this Court can get these parties to trial first. It is unclear whether that is

---

[4] DataQuill provides a list of names of "Texas inventors," but no information as to their present whereabouts or whether they would be subject to compulsory process in this district.

true. As the parties should know, they will not receive a trial setting in this Court until their *Markman* order is entered. The Court is already setting cases in early 2016, and thus even two parties on an expedited and agreed *Markman* schedule are unlikely to receive a trial setting less than two years from now. On top of that, this case has already been pending since August of 2013, and the resolution of this motion was delayed by a complex criminal trial, which occupied the Court's docket for the entire month of May 2014. The Northern District of California no doubt has its troubles, too, and they likely are not visible from bland statistics such as average time to trial. This factor is neutral.[5]

The second public interest factor is the local interest in resolution of the case. *Id.* at 317. Apple has decades of history with the people of Cupertino (where it employs over 16,000 workers) and with the Northern District of California. Apple has smaller, much more recent connections with this district given Apple's presence here and expansion plans for the future. But this case is about Apple's actions in designing and developing the iPhone and some of its software products, all of which happened in Cupertino. Whether those developers willfully infringed DataQuill's patents "calls into question the work and reputation" of residents of the Northern District of California, not the Western District of Texas. *See In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009). The fact iPhones are sold to Austin residents is largely irrelevant, as the mere presence of accused products in a district does not create a local interest. *See In re Volkswagen of Am.*, 545 F.3d at 318 (holding such a rationale "stretches logic in a manner that eviscerates the public interest that this factor attempts to capture"). This factor weighs in favor of transfer.

---

[5] Any additional delay caused by the transfer itself is irrelevant. The Fifth Circuit recently held "garden-variety delay associated with transfer is not to be taken into consideration when ruling on a § 1404(a) motion to transfer." *In re Radmax, Ltd.*, 720 F.3d 285, 289 (5th Cir. 2013).

The third and fourth public interest factors concern the familiarity of the forum with the governing law and the avoidance of conflict of laws problems. *Id.* at 315. Neither factor is particularly relevant here, as neither district has a demonstrated advantage in applying federal patent law and the parties have not raised any potential conflict of laws issues. These factors are neutral.[6]

## Conclusion

Because most of the *Gilbert* factors weigh in favor of transfer to the Northern District of California and none weigh in favor of retaining the case in the Western District of Texas, the Court concludes transfer is appropriate. There is no dispute Apple has a presence in this district, but that presence is unrelated to this litigation. The egg is here, but the yolk is not. The Northern District of California is clearly the more convenient venue.

Accordingly,

IT IS ORDERED that Defendant Apple Inc.'s Motion to Transfer Venue [#48] is GRANTED;

IT IS FURTHER ORDERED that DataQuill's Sealed Motion to Compel [#61] is DENIED;

IT IS FINALLY ORDERED that this case is TRANSFERRED to the United States District Court for the Northern District of California.

SIGNED this the 13th day of June 2014.

/s/ Sam Sparks
SAM SPARKS
UNITED STATES DISTRICT JUDGE

---

[6] Apple suggests the courts in the Northern District of California are "uncommonly familiar" with the iPhone given Apple's extensive litigation history there. Assuming familiarity with the parties or products can be relevant to the transfer analysis, Apple has not identified any specific knowledge likely to be relevant to DataQuill's patent infringement claims, and thus this consideration would be neutral as well.